DECISION AND JUDGMENT ENTRY
{¶ 1} The Athens County Court of Common Pleas convicted Dorothy Dillon of aggravated burglary and of complicity to commit felonious assault, aggravated robbery, and kidnapping. The court sentenced Dillon to serve her three sentences on the complicity offenses concurrently, but consecutive to her sentence on the aggravated burglary offense. Dillon contends that the trial court erred when it overruled her motion for acquittal on the complicity charges. Because Dillon failed to renew her motion after she presented evidence, we find that she waived any error. Dillon also asserts that the trial court erred in imposing the maximum sentence for aggravated burglary, and that the trial court's imposition of consecutive sentences for the complicity offenses is contrary to law. We disagree, because the trial court engaged in the appropriate analysis, made all the requisite findings, and gave its reasons for its findings before sentencing Dillon to the maximum sentence on the aggravated burglary offense and consecutive sentences on the complicity offenses. Accordingly, we overrule Dillon's assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} An Athens County jury found Dillon guilty of one count of aggravated burglary, a violation of R.C. 2911.11, one count of complicity to commit felonious assault, a violation of R.C. 2903.11(A)(1), one count of complicity to commit aggravated robbery, a violation of R.C.2911.01(A)(3), and one count of complicity to commit kidnapping, a violation of R.C. 2905.01(A)(3).
 {¶ 3} The evidence at trial revealed that Dillon's eighteen year-old son, Hi Hogan Dillon, Jr. ("Hi Hogan") and his friend, Malcom Cornell, traveled to Dillon's home from Florida and informed Dillon that they had run out of money. Dillon told Hi Hogan and Cornell that her neighbor, Howard Robinette, kept a large sum of money in his freezer. Robinette frequently lent Dillon money for groceries and cigarettes. Dillon proposed that she could use her friendship with Robinette to gain entry into his home so that Hi Hogan and Cornell could rob him.
 {¶ 4} On the night of July 30, 2001, Dillon asked Robinette if she could use his telephone. Robinette let her in and locked the door behind her. A short time later, Dillon unlocked the door. Hi Hogan and Cornell burst into the home. Cornell hit Robinette on the head with a flashlight. As Robinette attempted to get up and escape, Dillon tripped him, then sat on him, covering his face with a pillow. Dillon was yelling at Robinette to tell the boys where his money was and yelling at the boys to get the money. One of the three removed approximately $1,000 from Robinette's wallet.
 {¶ 5} Lloyd Rollins, another neighbor of Robinette's, became alerted to the commotion, and kicked in Robinette's front door in order to come to his assistance. He found Robinette covered in blood and heard people going out the back of the house. Meanwhile, Rollins' wife called the police. Officers responding to the call discovered Dillon on a nearby street with her clothing covered with blood.
 {¶ 6} Dillon denied involvement in the crime. However, Hi Hogan and Robinette, among others, testified against her. Hi Hogan admitted that he entered into a plea bargain with the State, pursuant to which the court sentenced him to nine years imprisonment. Hi Hogan and Robinette both detailed Dillon's participation in the crime.
 {¶ 7} At the close of the State's case in chief, Dillon moved to dismiss the three complicity charges. The trial court denied her motion. Dillon testified in her own defense, but did not renew her motion for acquittal at the close of evidence or after the jury returned its verdict.
 {¶ 8} The trial court accepted the jury's guilty verdict and sentenced Dillon to ten years on the aggravated burglary offense. On the complicity offenses, the trial court sentenced Dillon to eight years for felonious assault, ten years for aggravated robbery, and eight years for kidnapping. The court ordered Dillon to serve the terms imposed for the complicity offenses concurrent to each other, but consecutive to the aggravated burglary term.
 {¶ 9} Dillon appeals, asserting the following assignments of error: "I. The trial court erred in overruling Dorothy Dillon's Motion to Dismiss pursuant to [Crim.R.] 29 and in instructing the jury on complicity with regard to counts 2, 3, and 4 of the indictment. II. The trial court erred in imposing the maximum sentence for aggravated burglary. III. The trial court failed to fulfill the sentencing requirements for imposition of the maximum and consecutive sentences pursuant to R.C. Chapter 2929."
 II. {¶ 10} In her first assignment of error, Dillon contends that the state failed to prove that she committed complicity to commit felonious assault, aggravated robbery, and kidnapping. Dillon concedes that the evidence may prove her culpability as a principal offender in committing these crimes, but denies that the state produced evidence that she assisted Hi Hogan and Cornell.
 {¶ 11} A defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence. State v. Miley (1996), 114 Ohio App.3d 738, 742, citingDayton v. Rogers (1979), 60 Ohio St.2d 162, and State v. Wright (Feb. 28, 1996), Washington App. No. 95CA3. See, also, State v. Higgins
(1990), 61 Ohio App.3d 414, 418, citing State v. Durham (1976),49 Ohio App.2d 231, 236 (since defendant elected to proceed with trial and offer evidence on own behalf following close of state's case, he waived any error in overruling motion for acquittal); State v. Whitmeyer
(1984), 20 Ohio App.3d 279, 282 ("* * * it is well-established that where a defendant, after moving for a directed verdict at the conclusion of the state's case, offers evidence on his own behalf, any error which might have occurred in overruling the motion is waived * * *"); State v. Parks
(1982), 7 Ohio App.3d 276, 279, (when criminal defendant testifies in his defense after trial court has overruled his motion to dismiss at close of state's case, he waives his right to claim error in overruling such motion).
 {¶ 12} In this case, Dillon brought a Crim.R. 29(A) motion for acquittal at the close of the State's case in chief. Dillon then presented evidence by testifying in her own defense, and the State presented rebuttal witnesses. Dillon did not renew her motion for acquittal. Therefore, Dillon waived any error that the trial court may have made in overruling her motion. Consequently, we decline to review the trial court's ruling.
 {¶ 13} Accordingly, we overrule Dillon's first assignment of error.
 III. {¶ 14} In her second assignment of error, Dillon contends that the trial court erred in imposing the maximum sentence for her aggravated burglary conviction. In her third assignment of error, Dillon contends that the trial court's imposition of consecutive sentences upon her is contrary to law.
 A. {¶ 15} R.C. 2953.08(A)(4) provides that a defendant who is convicted of a felony may pursue an appeal on the ground that the sentence is contrary to law. The appellate court may modify the sentence upon clearly and convincingly finding that the record does not support the sentence, the sentence erroneously includes or excludes a prison term, or the sentence is contrary to law. R.C. 2953.08(G)(1)(a)-(d). In applying this standard of review, we do not substitute our judgment for that of the trial court. Rather, we look to the record to determine whether the sentencing court: (1) considered the statutory factors, (2) made the required findings, (3) relied on substantial evidence in the record supporting those findings, and (4) properly applied the statutory guidelines. State v. Persons (Apr. 26, 1999), Washington App. No. 98CA17, citing Griffin Katz, Ohio Felony Sentencing Law (1999) 542-547, Section 9.16-9.20.
 {¶ 16} In sentencing a felony offender, a trial court must impose a sentence that is reasonably calculated to achieve the two overriding purposes of felony sentencing, i.e., protecting the public from future crime by the offender and others and punishing the offender. R.C.2929.11(A). Additionally, the sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." R.C.2929.11(B). To achieve these purposes, it is within the court's discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. R.C.2929.12(A). However, the court must consider the factors set forth in R.C. 2929.12(B) and (C) relating to the seriousness of the offender's conduct, and those set forth in R.C. 2929.12(D) and (E) relating to the likelihood of the offender's recidivism. R.C. 2929.12(A).
 {¶ 17} The trial court's sentencing entry should include the trial court's findings regarding the sentencing factors as well as the facts in the record supporting those findings. See State v. Reed (Dec. 26, 2000), Washington App. No. 00CA01. However, in the interests of justice we may examine the entire record to determine the basis of a lower court judgment. Id. at fn. 1, citing State v. Blair (Dec. 27, 1999), Scioto App. Nos. 98CA2588 98CA2589, citing State v. Patterson (Sept. 21, 1998), Washington App. No. 97CA28.
 B. {¶ 18} First, we address Dillon's claim that the trial court erred in imposing the maximum sentence upon her with regard to her aggravated burglary conviction and her complicity to commit felonious assault and complicity to commit aggravated robbery convictions. R.C. 2929.14(C) establishes the public policy disfavoring maximum sentences except for the most deserving offenders, State v. Edmonson (1999), 86 Ohio St.3d 324,328. R.C. 2929.14(C) prohibits a trial court from imposing the maximum term of imprisonment for an offense unless the trial court determines that the offender falls into one of four classifications. State v. Riggs
(Sept. 13, 1999) Washington App. No. 98CA39, unreported, citing State v.Holsinger (Nov. 20, 1998), Pike App. No. 97CA605, unreported. Maximum sentences are reserved for those offenders who: (1) have committed the worst forms of the offense; (2) pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders. R.C. 2929.14(C). R.C. 2929.19(B)(2)(d) requires a trial court to "make a finding that gives its reasons forselecting the sentence imposed" if the sentence is for the maximum term,and requires a trial court to set forth its "reasons for imposing themaximum prison term." Edmonson at 328. See, also, Riggs; State v.Lenegar (Feb. 3, 1999), Vinton App. No. 98CA521, unreported. We will uphold a maximum sentence if the court's stated findings are supported by the record. See Riggs; Lenegar.
 {¶ 19} Dillon concedes that the trial court found that she committed the worse forms of aggravated robbery, complicity to commit felonious assault and complicity to commit aggravated robbery, but asserts that the record does not support the trial court's findings. However, our review of the record reveals support for the trial court's findings. Dillon conceived the idea for the offenses, planned the details for the offenses, and played a pivotal role in carrying out the offenses. Dillon took advantage of Robinette's kindness and trust based upon her relationship with him as his neighbor. Robinette was 75 years old at the time of the crime. He suffered a fractured skull, spent several days in the hospital, and still has trouble maintaining his balance as a result of the assault Dillon aided. Thus, the record supports the trial court's findings. Dillon has failed to clearly and convincingly demonstrate that the record does not support the trial court's findings. Therefore, we overrule Dillon's second assignment of error, and her third assignment of error to the extent that it pertains to maximum sentences.
 C. {¶ 20} In her third assignment of error, Dillon also argues that the trial court erred in imposing the sentences for her complicity offenses consecutive to the sentence for her aggravated burglary offense. Again, she concedes that the trial court made the findings necessary to impose consecutive sentences, but asserts that the record does not support the trial court's findings.
 {¶ 21} In general, a prison sentence imposed by an Ohio court must run concurrently with any other sentence imposed by any other court in this country. R.C. 2929.41(A). However, a court may impose consecutive sentences under R.C. 2929.14(E)(4) when:
 {¶ 22} "* * * the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 23} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 24} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct."
 {¶ 25} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 26} The inquiry under R.C. 2929.14(E)(4) is a "tripartite procedure." State v. Hiles (Nov. 6, 2000), Hocking App. No. 99CA23, unreported, citing, State v. Haugh (Jan. 24, 2000), Washington App. No. 99CA28, unreported. First, the sentencing court must find that consecutive sentences are "necessary to protect the public" or to "punish the offender;" second, the court must find that the consecutive sentences are "not disproportionate" to the seriousness of the offender's conduct and the "danger" he poses; and finally, the court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). Id. The verb "finds," as used in R.C. 2929.14(E)(4), means that the court "must note that it engaged in the analysis" required by the statute. See Edmonson, 86 Ohio St.3d at 326; State v. Brice (Mar. 29, 2000), Lawrence App. No. 99CA21. Additionally, the court must comply with R.C. 2929.19(B)(2)(c), which requires that the sentencing court make a finding giving its reasons for deciding to impose consecutive sentences under R.C. 2929.14. The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). Brice.
 {¶ 27} In this case, the trial court found that consecutive prison terms are necessary to protect the public from Dillon and to punish Dillon, and that the harm in this case was so great and unusual that a single prison term does not adequately reflect the seriousness of Dillon's conduct. Dillon asserts that the record does not support the trial court's findings.
 {¶ 28} However, the record shows that the public must be protected from Dillon, because she is willing to victimize an elderly neighbor and friend. Moreover, the fact that Dillon attempted to suffocate Robinette with a pillow until help arrived illustrates that Dillon was willing to risk causing Robinette great harm, perhaps even death, in order to complete her crime. The record further shows that Dillon could have prevented the attack on Robinette, but instead participated in it.
 {¶ 29} Thus, we find that the record supports the trial court's finding that Dillon is likely to commit future crimes, and therefore poses a great likelihood of recidivism. Dillon failed to clearly and convincingly demonstrate that the record does not support the trial court's findings.
 {¶ 30} Dillon also asserts that the trial court erred in imposing consecutive sentences because it resulted in her receiving an aggregate sentence of twenty years, while Hi Hogan received an aggregate sentence of only nine years as a result of his plea bargain with the State. R.C.2929.11(B) provides that the trial court's sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." Dillon contends that Hi Hogan is a similar offender who received a much lighter sentence in this case. However, the trial court found, and the record reveals, that Dillon, unlike Hi Hogan, conceived the plan to rob Robinette. Additionally, Dillon, unlike Hi Hogan, took advantage of Robinette's trusting relationship with her in order to complete the crime. Dillon tripped Robinette, sat on his chest, and attempted to suffocate him during the course of the crime. In contrast, Hi Hogan did not touch Robinette. Finally, Hi Hogan showed remorse for his actions, while Dillon showed no remorse and continued to deny her involvement despite the testimony of Hi Hogan and Robinette.
 {¶ 31} In sum, we find that the record contains evidence supporting the trial court's findings that consecutive sentences were necessary to protect the public from Dillon and to punish Dillon, and that consecutive sentences are not disproportionate to Dillon's conduct, even when compared with Hi Hogan's sentence and conduct. Moreover, the record supports the trial court's finding that the harm Dillon caused in this case is so great and unusual that a single prison term does not adequately reflect the seriousness of her conduct. Therefore, we find that the trial court did not err in imposing consecutive sentences.
 {¶ 32} Accordingly, we overrule the remainder of Dillon's third and final assignment of error. We affirm the judgment of the trial court.
 {¶ 33} JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment Opinion as to A/E II III,
Concurs in Judgment Only as to A/E I.
Harsha, J.: Concurs in Judgment Opinion.